So the session will be number 24-11270, Carmen Lamonaco v. Experian Information Systems Inc. May it please the court, Jeff Johnson on behalf of Experian. Experian's witness testified that someone with Ms. Lamonaco's name, address, Social Security number, and birth date signed up for a credit monitoring service, paid for that service for several months, and continued using a free version thereafter. In response to this evidence, Ms. Lamonaco said nothing. She did not dispute signing up, and she did not claim that she saw something else when doing so. Courts across the country, in cases too numerous to mention, have compelled arbitration on exactly those facts. At the very least, they were enough for a trial on whether Experian had proven its right to compel arbitration. District Court's two rationales for resisting that obvious conclusion do not withstand scrutiny. Experian's witness was more than capable of testifying about Ms. Lamonaco's sign-up based on his years at the company and his review of its records. The contract makes clear that whatever the court's concerns about waiver, the arbitrator, not the judge, had to resolve them. In any event, no federal court has ever found waiver from the filing of an amendable answer and a Rule 26-F report. For those reasons, the court should reverse. I can start with Experian's evidence that Ms. Lamonaco agreed to arbitrate. First, Mr. Williams testified that he had personal knowledge of Lamonaco's sign-up, including, quote, through the review of membership enrollment data. That's from his declaration, paragraph one. That suffices. Under this court's precedence, like Bazemore, under other circuit court's precedence, that's enough to establish personal knowledge of a corporate declarant, which is normally presumed and is supposed to be a very minimal bar. In response to this point, Ms. Lamonaco has abandoned any argument that you could get from the district court's opinion that Mr. Williams had to be there and had to watch it in person. Instead, she sort of focuses on two separate requirements. One, there's a suggestion that he had to attach the documents to his declaration. And there's just no support for that in this court's case law or in the federal rules of evidence. In fact, in this court's Mason decision, it rejected that requirement particularly. It said there's no document requirement. Ms. Lamonaco, so you could ... Let me ask you this. Some of the district court opinions that have come out while this case was on appeal distinguished the affidavits in those cases from this one because they described what sort of account data CIC had and that that was available for review. Why is that not required here? This affidavit seems a little more slender than some of those. Let me sort of give you a little bit of the history here. In the Fourth Circuit, a district judge in the decision that's currently on appeal said that Mr. Williams' declaration wasn't enough. We disagree with that. It's on appeal. It's been argued. I would encourage the panel, if they're interested, to listen to the argument in that case. We think that Mr. Williams' declaration has always been sufficient. Again, he says, I reviewed membership enrollment data. That's normally enough for corporate declarants in cases across the country. In response to that, because we do this a lot and because we wanted to avoid any possible doubts or any concerns, there's another declarant, Mr. Smith, who goes into a little bit more detail on this stuff. We do not and have never thought that any of that is required. I don't think there's some sort of adverse inference that can be drawn against us. Tell me what you mean by a little more detail. There's the two main differences between Mr. Williams and Mr. Smith is different. Mr. Williams is a vice president and his job duties are described in less detail in his declaration, whereas Mr. Smith talks a little bit more about what his job duties are. It's very clear that both of them are involved in the process. Let me just tell you what the Williams' declaration says. Mr. Williams says in paragraph one of his declaration that his job requires that he be familiar with the marketing, advertising, and sales of CIC consumer credit reports, including services consumers enroll in, the forms they must complete to enroll. Then he says he got his information through personal knowledge, including knowledge acquired in the course and scope of his job responsibilities and through review of pertinent documents maintained as business records, such as CIC's membership enrollment data. I don't have the Smith declaration and the other cases right before me right now, Your Honor, and it's not in the evidence in this case, but I believe Mr. Smith says a little bit more about the pathways and things like that. The type of data that they keep. Right, but again, I'm not aware of any provision in the federal rules that requires you to lay out in detail exactly the sort of spreadsheet that you looked at or the exact form. He said, I looked at the membership data and it told me when she signed up. I think it's also worth pointing out in this context, it is our burden at the summary judgment phase of a motion to color attrition to produce enough evidence that if not denied would make a juror find for us. And then if there's something wrong with that, the other side has a chance to come forward and say, no, I disagree. That happens all the time in the cases cited in the briefs. Counsel, under section four, the court, of course, can try the case. When there's a motion to compel under section four, not USA section four, the court can try the case. Precisely, and we think that's another error the district court made here. In a problem like this, the court can say, well, let the sides request admissions of facts. The problem could have been solved in the New York minutes either by rule 16 pretrial conference, what's at issue here, or we'll just have requests for admissions of fact. And, of course, somebody denies facts, which are there, you run the risk of attorney's fees sanctions. I couldn't agree more, Your Honor. I'm speaking for myself. The way a district judge should have handled a case like this is to do what I've just said. Right. You just assembled the parties under rule 16. So we don't . . . Two points. One, we don't think that he needed to even go that far. We think the paper evidence . . . Well, the problem . . . At the very least, there should have been a trial. The problem is your cases say the court doesn't even have to go that far. It's just like any summary judgment motion. A party that moves for summary judgment says, I think right now the evidence is such that no reasonable juror could find against me. But if I'm wrong about that, I don't forfeit my right to have the trial that will establish that as long as I'm not in a basemore situation where my evidence is insufficient as a matter of law for any reasonable juror to find in my favor. There's no way that we've reached that level in this case. Of course a reasonable juror could conclude, well, look, they have a declaration from a corporate witness who says I reviewed corporate records. They show that a person with this name, Social Security number, address, birth date, paid for a service for months, stopped paying a service, and of course a reasonable juror could look at that and say, yeah, I think there's an agreement. It's arbitrary. So it was at the very least reversible enough to have a trial. Given that there are many different lawsuits that are similar to this one, why did it take three months to move to compel arbitration? So, Your Honor, there isn't testimony on that point. I think that the few things I'd say, one, three months at the beginning of a lawsuit, I rarely see an answer filed in three weeks. I don't recall the last time. This was like, this case actually was the first case when reviewing a record that I So this case was very sort of early on. We moved to compel in three months. With respect to that answer in particular, it was still within the time period to amend the answer. So that's exactly what our motion to compel functionally was, a motion to amend to add a defense. That could have only been denied for, you know, it has to be granted unless there's sort of prejudice or a problem there, and there wouldn't have been in that case. So I don't think that three months is particularly long in the context of initiation of a civil suit these days, and I think more importantly, we argue in our opening brief that we aren't aware of no federal court ever, anywhere, that has said a party has waived the right to arbitrate, has acted inconsistently with the right to arbitrate, simply by an amendable answer that doesn't raise arbitration, and a court-required Rule 26-F conference report. In response, Ms. Lamonaco has not produced anything to suggest the contrary. I have a question on a different topic before you sit down, and that is, how is there an appropriate nexus between the arbitration agreement and this lawsuit? So two things, one, there's an agreement in the arbitration agreement to arbitrate questions of scope, questions about enforceability, and so that obviously has a nexus to this question about scope. Two, on the merits, this is not like a case like Calderon, where there was a wholly unrelated affiliate who comes along later and says, oh, I stepped into the shoes, this is some other contract, that was about satellite services versus phone production. The contract that Ms. Lamonaco entered expressly designates Experian Information Solutions as an affiliate, expressly gives it the right to compel arbitration, and expressly says that Experian Consumer Services will use Experian Information Services for purposes of the very credit monitoring that the parties are agreeing is the part of the contract. So Experian Information Solutions isn't some sort of stranger to this contract, it's a core part of this whole provision. Isn't that a provision for the district court to decide, though, because if there isn't a nexus, then the Arbitration Act doesn't even apply? So we have an argument in our reply that we think that it's not quite the same as a question about formation, it's a question about enforceability, but assuming that's right, then I would go to my second argument, that of course, that we're within the affiliates clause here. The decision that Judge O'Scanlan wrote that this court then sort of adopted in Calderon uses sort of wholly unrelated as the test for when you're so far outside of the scope that you can't compel arbitration under Section 2. There's just no dispute that we're miles away from that here, where Experian Information Solutions, again, is named as the contract as an affiliate, as a party able to control arbitration, and provides key services that make the entire credit monitoring service work. Experian credit monitoring wouldn't work the way that it works if it wasn't for the fact that Experian, the reporting agency, is doing the work on the reporting side, to give the information over to Experian Customer Services to provide the credit monitoring. I see that my time is up. Thank you. Thank you, Your Honors. May it please the Court, my name is Deneen Waslik on behalf of Plaintiff Appellee Carmen Lamonaco, and I think it is critical in this case to anchor all of these questions on the issue of what this lawsuit is about. This lawsuit is about Experian's business records, allegedly, we allege, not reflecting things that, attributing to her things that were not her. And so, you know, opposing counsel stands up here and says that the affidavit states that she entered her address, social security number, and email, but doesn't give us any of that information with which to verify that. I don't know about you, but I have no idea what website I visited on February 6, 2020, and without something to show that this is actually her and not perhaps the other person. Did your client contest that she used that service for several months? Well, first of all, I don't think the burden was on her to do so. Second of all... Maybe, maybe not, but did she contest that? There was no evidence, there was no affidavit, because the other side did not meet its burden. And also, again, it would have been shadowboxing, because all they said was she would have entered all this information, but they didn't give us what the information was. How do they know that it's the same Carmen Lamonaco, the cart before the horse? You're on an appeal of a sober judgment. Correct, Your Honor. Court granted a sober judgment. Well, yeah, declined to say the same statement. The whole body of FAA law is swallowed up in the procedure in the district court. Sure. They're going to arbitrate this problem, or this dispute, by the AAA rules, do you agree? The AAA rules. I agree that the contract... American Arbitration Association rules. But we don't agree that there's evidence that she entered into the contract that there's... Well, the AAA rules are a matter of judicial notice, would you agree? Sure. All right. And what do the rules provide in terms of determining whether there was a waiver or the right to seek arbitration? What do the rules say? Honestly, Your Honor, I do not know. That was not argued below by any party. Yeah, but this is part of the whole case. Sure. Yeah. The arbitrator would decide whether there was a waiver or not, because that's what the our jurisprudence, starting with Terminix. You're familiar with Terminix. But I think, Your Honor, before you even get to the issue of waiver, you have to get to whether she entered into this contract. No, we're on our summer judgment, and he's decided, as a matter of fact, at law, it's a mixed fact question, that there's been a waiver. Yes, as a secondary holding after the... And therefore, there could be no arbitration. Correct, Your Honor. All right. Suppose the party's agreement is that the issue of whether there's a waiver or not will go before the arbitrator. Your Honor, I think there's two answers to that question. First of all, again, I do have to emphasize that we don't agree that Ms. Lamonaco entered into this contract. But secondarily, I think the case that I filed as supplemental... Even whether or not she's been identified properly would be before the arbitrator, would it not? I don't think so, Your Honor, because... Well, let's put it this way. Then why didn't the district judge summon a trial under Section 4? You're familiar with Section 4 litigation? Sure, Your Honor. All right. The court could have tried the issue of whether or not she is a party. She could have if the plaintiff had met the burden of raising... Do you agree with that? I'm sorry, if the opposing party had met the burden of evidence. When the defendant is saying that she's a party and she's, in effect, admitting that she is, not quite, wouldn't the obvious thing to do is to try the issue? I think she's absolutely not admitting that she's a party to this contract. And I think that the other side's evidence, what the trial court found, the other side's evidence was not sufficient to establish that she was a party to this contract. And, Your Honor, I think that... There's an issue of whether or not she was a party. Do you agree with me? I agree that there's an issue of whether or not she's a party. There's an issue of whether or not there was a waiver. I believe that that's not really an issue, but yes. Both of those issues are arbitrable. Would you agree? I don't necessarily agree with that because... Have you read the AAA rules and applied? Honestly, Your Honor, I haven't because that was never argued by any of the parties. The arbitrator has the power to do all of that. I think that the other side waived that by not raising that as an argument to begin with. Oh, but they did brief that argument. I'm making an argument for the other side that they haven't briefed. Yeah, they haven't briefed it, and as the appellant, it's their job to bring forth... Well, they do challenge a summary judgment. Yes. Okay. Because there are issues of fact remaining, don't they? I think there are issues of fact remaining. That's implicit. Yeah, absolutely. To me, that's implicit in appealing a summary judgment. Sure. I think there's both insufficient evidence that created issues of fact. Their argument... Both ways. Well, their argument, as I see it, is A, as a matter of fact, the court should have ruled with the insurance company. All right? With experience. Okay. Experience. All right. That's their first argument. I'm not sure I understand your question, Your Honor. I'm sorry. Their argument is that the court on summary judgment should have found as a matter of law that this controversy was arbitrable. And I think that the... And that they had not waived. They are doing that based on the assumption, A, that she is a party to this contract, but also, you know, the participation that they made in this case was more than just, you know, quote, unquote, a mere three months. It was filing an answer that did not allege any right to arbitrability. I understand. The alleging in their case management report that they're not saying anything about seeking... But their argument is not on summary judgment. It's that, number one, the court should have decided in our favor as a matter of law. There was no waiver. She's a party to the arbitration agreement. And under the rules, it should go there, to AAA arbitrator. That's their first point. Second point is, if we're wrong, there's a fact issue. Your Honor, I think that they didn't meet their initial burden to even get to any of those things. The question is, there's no fact issue with regard to waiver. There is no fact issue with regard to waiver. But you can't make that argument unless there's no arbitration agreement. Well, I think that a waiver is, you know, not admitting that they did it, but even so, there's a waiver. I think that we can make the argument on the alternative because that's what the court did. The court did a belt and suspenders of both finding that the evidence was insufficient to prove that Ms. Lamonaco was... You know, even raise enough of an issue whether Ms. Lamonaco was indeed the person who they allege signed up for this service, you know, several years prior. If we were to have, if there were to be a trial or some other sort of fact finding on whether there was an arbitration contract, what would she testify? Would she testify that she signed up for an account or not? I mean, I can only posit a guess that she would testify. I don't know, and they haven't given me the information that's in their system that they have control of to let me know if I did. I don't remember, but, you know, she's not... How can she say anything other than, I don't know if I, you know, looked at this website in 2020. You know, I think they have to meet the burden of connecting the dots between her. Is your view that she would dispute that she signed up for this service at all or that she isn't clear on whether she saw the particular terms that they allege that a person who signed up at that time would have seen? I think both, Your Honor, just because there's no, there's nothing connecting her to the signing up of this service other than this gentleman saying Carmen Lamonaco signed up. It doesn't give me any information when the whole point is that Experian has gotten wrong before who Carmen is versus someone else. Well, sure, but let me give you an example. To assess their evidence, if they claim that it's her. Let me explain the kind of differentiation that I'm trying to draw. If I, let's say I signed up for the Chick-fil-A app, right? And I, maybe I don't remember signing up for it, but I've got the app and I'm sure that I accepted some terms and conditions. And I've been scanning that app for months and then I decided to delete it from my phone, right? But I still remember that I went to Chick-fil-A and used the app. But I don't remember what the terms were when I signed up for the app, right? Those are two, I think, different things. And I'm wondering, is she really saying, I never used this service, I have no idea what they're even talking about? Or is she saying, you haven't really shown me with certainty what I agree to and I don't remember it? Well, I think she's saying that you haven't said that any of this is me. You haven't shown me that any of this is actually me. I mean, I think we all sign up for a gazillion things and hit OK every day. Right, but is she saying, I just never used this service at all, ever? I don't know, because we don't have her testimony in the record. All we have is a broad assertion that she did at a particular time. And we don't have the information. One of the things that the other side said is, oh, you could have done discovery if you wanted to know that. Their motion to compel arbitration was filed basically instead of responding to our discovery. So we were trying to get the information to determine, is this the right information to apply to us? And they have refused to give it. And they were granted a reply by the trial court and didn't address this issue at all. They just kept harping on the fact that this procedure was good enough to sign up and not responding at all to the issue of did she sign up. I have a question about the complaint.  Ms. Lamonaco alleges in the complaint that she received an alert about the erroneous auto loan that was included on the report. Did that alert come through service provided by CIC? I have no idea, Your Honor, because it's not in the complaint. It is not mentioned. And there's no facts to show that before the trial court. So, you know, that is not something that anybody argued about before the trial court about whether or not that is. I do want to add just, you know, pretty clearly that I do think that on the issue of the waiver, Your Honor, I think the recent decision on Merritt Island versus Woodworks, which I did file yesterday, I do have hard copies if you want it, I think makes a little bit more of a differentiation between the notion of waiver and the notion of default and to the extent that the other side has argued that the agreement says that the issue of waiver goes before the arbitrator, that's not exactly the same thing as the issue of default and the court found both here. Haven't you claimed waiver? I'm sorry? Haven't you claimed waiver? I think that all parties did not have the benefit of the clarification of Merritt at the time that this was argued, including the trial court. So it was argued default slash waiver, but I think they are slightly different things with the benefit of the most recent case law that's been... Did you ever argue to the district court that there was no nexus between the arbitration agreement and this lawsuit? I know that the trial court stated that there was no nexus between... Well, no, it said that it doubted. I don't think that the trial court made a holding on that. It was a little bit more... The last sentence is, for these reasons also, we deny the motion, so the court did make a holding on that. OK, but did you raise that issue, is my question. I don't recall. I don't think that the trial court is bound by what we raised and what we argued in our briefing below. The trial court made a finding, said, this is another reason I, you know, deny the motion to compel arbitration. And so the other side didn't raise it at all in their appellate brief. So they have not really given this court the benefit of a full argument on that issue on appeal. They didn't raise that issue or any other issue with regard to that holding. So we do believe that the reply saying that it was just a little bit too little, too late. I do want to just, you know, talk a little bit about Bazemore because I think it really flips in the exact opposite direction. Bazemore talks about, you know, saying that someone would have done something is not the same as having done it, and that language is echoed in the affidavit that is here. It talks about, you know, in Bazemore, the issue was more about what the terms of the agreement are. The court said, you can't just say, she agreed to something that says she can do arbitration, you have to give us the terms. But by the same token, you can't just say, she signed up for this, give us the information that shows that she signed up for it. It goes to the quality of the evidence and the fact that this was the controlling issue of both the case and the arbitration of the issue is, was she the person who signed up for this thing on this date that made these particular contract terms apply? We believe that, based on all the things we said in our brief, that there are three reasons why the trial court was correct in refusing to compel arbitration, and I do think that the default slash waiver is really much stronger because of the many ways that Experian participated, not just because they had to file a case management report, but the substance of those things is what should be looked at. And if you look at the substance of all those things, the totality of the circumstances does show that they acted, you know, that they did not act in, they faulted on their terms of acting like they wanted to have arbitration. So for all those reasons, Your Honor, unless there's any other questions, I respectfully request that the court affirm the trial court's well-reasoned opinion. Thank you. A few points, Your Honor. First... What does the arbitration agreement say about waiver? It says that... The arbitrator gets to decide that question. What it says specifically about waiver is that, quote, whether you or ECS, through litigation, conduct, or otherwise, waive the right to arbitrate, is a question for the arbitrator. This morning... The next question.  There are, in theory, two issues in this case. One is a matter-of-law question on what district gets to decide. The second is whether or not the subject judgment should be set aside because there are issues of fact. That's an alternative position. Have you waived that point? Of course not, Your Honor. Our opening brief on appeal to this court says, we showed that there is no reasonable dispute of fact that there's an arbitration agreement you should compel. At the very least, the judge should have gone to the Section 4 trial that you talked about to resolve disputes of fact. This morning, I do not hear opposing counsel to actually say that no reasonable person could even believe that our evidence, which again shows that someone with her name, address, social security number, birth date, paid for a credit monitoring service for a few months. Of course a reasonable fact-finder could use that to say, yeah, I think it's more likely than not that she has a contract with Experian. So at the very least, there has to be a remand for a trial. We don't think that that trial is necessary because the undisputed evidence shows that she agreed to the contract. With respect to the refrain, this is a fraud case, exactly. Ms. Lamonaco had no problem figuring out, oh wait, I saw something from a credit alert. Who knows where it comes from, she says now. That's not my account on my report. I can stand up in this court right now and say, without doubt, I have never signed up for a paid credit monitoring service in my life. If Experian moved to compel arbitration against me and a claim I brought against them, I would say, what are you talking about? I've never purchased a paid credit monitoring service. She can't do that, and consistent with Rule 11, her counsel cannot say that she'll say it on remand. I don't think the court has to blind itself to the fact that to this day, she refuses to say she'll dispute that. All she says is, oh, who knows what we signed up for. I know I've never signed up for a paid credit monitoring account, and Ms. Lamonaco can't say that. On the topic of waiver, she argued this morning that it's not delegable. This court's case law, every circuit's case law is different. There's no reason that there would be a magic requirement that parties can't agree to arbitrate that question, and there could not be clearer language than we have here. With respect to the 28J letter filed yesterday about a decision released two weeks ago, I think that Judge Grant's questions were absolutely correct. She has never argued that she can escape the delegation clause because it only delegates questions of, quote, default, not questions of waiver. That's just never been a part of this case, and we'll stand on our letter for the rest of that. And then, let's see, finally, oh, sorry. With respect to arbitration discovery, you know, again, it's a little bit telling. Judge Schoflat, you floated the idea. Well, why don't we just go back and have some requests for admissions? We'll get this all squared away. He doesn't seem interested. I really wonder why that is. She could have sought that discovery in this case had she thought it would show anything other than that Ms. Lamonaco either does not recall, which isn't enough, or, in fact, did sign up for credit monitoring services. So we don't have the truth about that on their view because they don't want the truth about that on their view. We know what Mr. Williams says. We know what his declaration says. That makes it clear. So I just think we don't have to be blind to what's going on here. And then, finally, with respect to nexus, you're, again, exactly right, Judge Grant. They never argued below that there was a nexus problem. The district judge's doubts on that aren't enough to raise it, and for the reasons they already gave, the contract that promises to provide credit monitoring services through Experian obviously has a nexus to claims against Experian based on that credit monitoring. I'm sorry, based on that credit reporting that Experian does. And with that, we ask the judgment below be reversed. Thank you. Thank you to both counsel. Court is adjourned.